UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THERESA ANN FORD,

**Plaintiff,**

      v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:18-cv-626-TPK

OPINION AND ORDER

## OPINION AND ORDER

Plaintiff Theresa Ann Ford filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on April 4, 2018, denied Ms. Ford's application for supplemental security income. Ms. Ford has now moved for judgment on the pleadings (Doc. 9), and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will deny Plaintiff's motion, grant Defendant's motion, and direct the Clerk to enter judgment in favor of the Defendant Commissioner.

### I. BACKGROUND

Plaintiff's application for supplemental security income was filed on July 21, 2014. She alleged that she became disabled on May 14, 2014 due to multiple medical conditions including pain in her feet, back, and neck as well as trouble wither nerves and memory. Plaintiff was 41 years old on the date her application was filed.

After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held on March 3, 2017. The Administrative Law Judge issued an unfavorable decision on April 6, 2017. She concluded that Plaintiff suffered from several severe impairments, including lumbosacral spondylosis, lumbar radiculopathy, scoliosis, and lower lumbar spine facet hypertrophy. According to the ALJ, these impairments limited Plaintiff to the performance of a reduced range of sedentary work. She could occasionally lift and carry up to ten pounds, could stand or walk for two hours and sit for six hours in a workday, could frequently push and pull, could occasionally climb ramps or stairs (but never ropes, scaffolds, or ladders), could occasionally balance on level surfaces, could occasionally stoop but never kneel, crouch, or crawl, could frequently reach overhead, handle, and finger, could tolerate occasional exposure to extreme cold or heat, wetness, or humidity, could not be exposed to unprotected moving

mechanical parts and unprotected heights, could follow simple instructions, could do simple tasks independently, could maintain attention and concentration for such tasks, could maintain a simple regular schedule, and could learn simple new tasks. Finally, she could do work involving frequent contact and interaction with supervisors, coworkers, and the public.

At the administrative hearing, a vocational expert, Ms. Duchon, was asked whether a person with that work capacity could do any jobs which existed in significant numbers in the national economy (Plaintiff did not have any past relevant work). She said Plaintiff could work as an envelope addresser, a stuffer, and a surveillance system monitor. The ALJ accepted this testimony, along with testimony about the number of these jobs which exist in the national economy, and found that because Plaintiff could perform substantial gainful activity during the period of time at issue, she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts that there are two separate reasons for reversing the ALJ's decision and remanding the case. She argues, first, that the ALJ based her residual functional capacity finding on her own lay opinion as opposed to the medical evidence in the record. Second, Plaintiff contends that the ALJ did not adequately discharge her duty to develop the record. The Commissioner responds that the ALJ had a sufficient basis for making her RFC finding and did not need to develop the record further in order to make those findings.

## II. THE KEY EVIDENCE

There is no opinion evidence from treating, examining, or reviewing sources in this record, and not an overly large number of treatment records. In addition, Plaintiff did not undergo any consultative examinations (she was scheduled for such examinations on three different occasions, but failed to attend each of them). The evidence therefore consists of a smattering of treatment records, records of physical therapy, and Plaintiff's own testimony.

At the administrative hearing, Plaintiff testified that was 44 years old and lived at home with two children ages 7 and 14. She had completed high school as well as one year of college. She had worked at several different jobs between 2007 and 2014, none for very long, and quit working due to back spasms. She had constant pain in her lower back with radiation to both legs. Activity made her pain worse. She took muscle relaxants and naproxen for her back condition and also went to physical therapy once a week.

Plaintiff described the activities she did as a stay-at-home mother. She said she could not do heavy lifting any more, like moving appliances or carrying large bags of groceries, but she could cook meals, do laundry, vacuum, sweep, and mop, although those activities took more time to do. She was able to perform personal care and could follow instructions and interact well with others. She could use public transportation and liked to read and watch movies as well as visit with friends. She said she could walk or sit for two hours at a time, with breaks, and stand for an hour at a time as well as slowly climb stairs. Her pain caused difficulty sleeping.

Very briefly, the medical records show that in May, 2014, Plaintiff was treated in the emergency room for back pain and prescribed medication for lumbosacral radiculopathy. She sought treatment for the same condition the following month from a primary care provider. At that time, her gait was slow and straight leg raising was positive on the right. She was prescribed naproxen and Balcofen, the same medications she was taking at the time of the hearing two years later. Subsequent physical therapy notes show limitations in the flexion and extension of her back but a good prognosis. She was treated in the emergency room later in the year when her back pain flared up and was again discharged in improved condition after receiving medication. X-rays taken of her lumbar spine were consistently negative. Later office visit reports show that her gait and station were normal. Finally, there is a note dated November 30, 2016, stating that Plaintiff had been discharged from physical therapy due to lack of attendance and poor compliance to scheduled appointments. That same note said that she had not achieved or fully achieved her goals of increasing her spinal range of motion to normal limits (although it did improve), sitting for an hour without pain, and decreasing her pain without lifting to 2/10, but she was able to walk to the grocery store without pain. (Tr. 351).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

Although Plaintiff advances two separate arguments, they have a similar foundation and will be discussed together. In essence, Plaintiff asserts that an ALJ could not have made a proper residual functional capacity finding on this record because it is too sparse and contains no medical opinions supporting the functional capacity which the ALJ attributed to Plaintiff. Therefore, she asserts, further development of the record is necessary before such a finding can be made.

The ALJ provided this explanation for her residual functional capacity finding. First, she explained that she was following the dictates of Social Security Ruling 96-8p and 20 C.F.R. §416.929 by considering Plaintiff's impairments in combination and by using all of the evidence of record, both medical and non-medical. She then reviewed and evaluated Plaintiff's testimony, concluding that it was not entirely consistent with the medical evidence (a finding Plaintiff does not contest). The ALJ discussed what medical evidence there was, noting that Plaintiff's gait was described as slow but otherwise normal, that she did not use any assistive devices when walking, that with the exception of some findings of mild pain on back motion and a positive straight leg raising test, the medical examinations were normal, and that x-rays were generally negative or showed only mild findings. She pointed out that Plaintiff had been prescribed or took only naproxen or ibuprofen for pain, that she missed numerous appointments for physical therapy and was discharged from physical therapy for failing to show up. Plaintiff did not explain that failure. Plaintiff's treatment was also conservative, not involving any devices like TENS units or recommendations for surgery. Finally, the ALJ found that Plaintiff's activities of daily living as a stay-at-home mother were not consistent with an allegation of total disability.

The ALJ then supported her residual functional capacity - a restriction to a reduced range of sedentary work - by stating the following:

> In determining the amount the claimant could lift, carry, push, pull, sit, stand, and walk, I considered the medical evidence as well as the claimant's reported activities. Given her complaints to treating sources and the medical evidence I included limitations on climbing, balancing, stooping, kneeling, crouching, and crawling. I considered the objective medical records, subjective complaints, and the claimant's activities in determining her ability to reach, handle, finger, and feel including fine manipulation. Due to the lack of complaints and objective evidence, I determined that the claimant has no visual or communicative limitations. Given the claimant's type of medically determinable impairments, I included environmental limitations on her ability to work. I considered the claimant's education, work background, lack of subjective complaints and treatment, activities, mental status examinations, and observations by treating and examining sources in limited (sic) the claimant to following and understanding simple

> directions and instructions, performing simple tasks, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, and learning simple new tasks. Give the lack of subjective complaints and treatment as well as her activities, I determined that the claimant could perform work that involved frequent contact and interaction with supervisors, co-workers, and the public.

(Tr. 20).

At times, an ALJ will arrive at a residual functional capacity finding which is either not entirely in agreement with the available opinion evidence or, as in this case, made without the benefit of any opinion evidence at all. Sometimes that is error. In support of her argument that it is error in this case, Plaintiff relies on a line of cases that favorably cite *Deskin v. Comm'r of Social Security*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and which arguably apply a bright-line rule that if there are no medical opinions in the record addressing the issue of residual functional capacity, an ALJ may never make such a finding because that would constitute the ALJ's "playing doctor" - that is, interpreting the raw medical data and translating it into findings as to what level of activity a claimant is capable of performing. *See, e.g., Wilson v. Colvin*, 2015 WL 1003933 (W.D.N.Y. Mar. 6, 2015). The Commissioner, by contrast, relies on decisions such as *Matta v. Astrue*, 508 Fed. Appx. 53 (2d Cir. 2013) for the proposition that the ALJ must simply make an RFC finding which is consistent with the record as a whole.

There is a substantial amount of discussion in the case law - especially in district court decisions within the Sixth Circuit, which is the Circuit in which *Deskin* was decided - about whether *Deskin* correctly interprets social security law and also whether it really sets forth an absolute rule that an ALJ may never make an RFC finding in the absence of some medical opinion evidence as to functional capacity. The same Magistrate Judge who authored *Deskin* later stated that the "rule" of that case applies in only two narrow situations - where there is no opinion evidence in the record at all, and where there is a substantial amount of medical evidence post-dating the only opinion evidence which both calls the earlier opinion into question and has not been interpreted by any medical source. *See Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). *Deskin* itself also cited favorably the decision in *Manso-Pizarro v. Sec'y of HHS*, 76 F3d 15 (1st Cir. 1996), which holds that in some cases, the evidence is so clear and shows so little impairment that an ALJ does not require a medical opinion in order to formulate a residual functional capacity finding. Further, as the Court in *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) explained, after discussing both *Deskin* and numerous cases which appear to follow it,

> the social security statute does not contemplate a bright line rule requiring the ALJ to base his or her RFC finding on a physician's opinion. For example ... 20 C.F.R. § 404.1527(d) provides that the final responsibility for deciding issues such as the claimant's residual functional capacity is reserved to the Commissioner. However, the district court cases cited above also do not require the ALJ to entirely base his or her RFC finding on the opinion of a physician—they require the ALJ's RFC

assessment be supported by substantial evidence and not merely on the ALJ's own medical interpretation of the record.

And there is some case law stating flatly that *Deskin* was simply wrongly decided. *See, e.g., Henderson v. Comm'r of Social Security*, 2010 WL 750222, *2 (N.D. Ohio Oct. 21, 2011)("The Court finds ... that *Deskin* ...is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals").

Interestingly, the Commissioner appears to have chosen not to wade into this particular thicket. The Commissioner's memorandum does not mention *Deskin* at all. Rather, it cites to numerous cases where there *was* opinion evidence about the claimant's functional capacity, but where the ALJ ultimately rejected in favor of different findings - something an ALJ is clearly permitted to do if the evidence, such as treatment notes and findings, is "relevant to [the claimant's] ability to perform sustained gainful activity." *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. Jan. 8, 2017). That approach is common and has been followed by this Court - *see, e.g., Smith v. Comm'r of Social Security*, 337 F.Supp.3d 216, 222 (W.D.N.Y. 2018) - but it does not directly address the situation present here. The Commissioner also argues at length that the non-medical evidence, including Plaintiff's testimony and her lack of compliance with the regimen of physical therapy prescribed for her, provide substantial support for the ALJ's determination.

This Court need not resolve here the issue of whether *Deskin* represents a correct interpretation of the law. Assuming, for purposes of argument, that *Deskin* was rightly decided and that it is the rare case when an ALJ can formulate a residual functional capacity finding without any opinion evidence on that subject, this appears to be one of those cases. Here, Plaintiff is a younger individual who, over the course of several years, sought and obtained only sporadic treatment for a back problem. There are no objective tests showing any defects or deformities of substance, and, as the ALJ noted, none of her treating doctors placed any notes about functional limitations in the record. Her treatment was very conservative, and even then Plaintiff did not fully follow the treatment recommendations. She appeared to be capable of the activities needed to be a single stay-at-home mother on a consistent basis, and even to care for a grandchild to some extent (Tr. 187). Her back conditions are not necessarily ones which are beyond the ability of a lay person to understand. She did not attend the consultative examinations arranged for her, which would have given her the opportunity to present evidence as to her functional capacity. Finally, the ALJ crafted a residual functional capacity which appears to have given her the benefit of every doubt, limiting her to sedentary activity with an array of other restrictions, including mental restrictions, even though the record contains no evidence of any mental impairment. This convergence of facts is atypical, and it would not appear that allowing an ALJ to come up with a residual functional capacity finding on this record would undercut the general proposition set forth in *Deskin*, and with which this Court agrees, that "[w]here the ALJ proceeds to make the residual functional capacity decision in the absence of a medical opinion as to functional capacity from any medical source ... there exists cause for concern that ... substantial evidence may not exist" to support that finding. *See Deskin*, 605 F. Supp. 2d at 911.

Given that the Court has concluded that the ALJ properly made a residual functional capacity finding on this record, it would have been within the ALJ's discretion not to develop the record further. Generally, the duty to do so is triggered only when the record is not adequate to allow for a finding as to disability to be made. *See, e..g., Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996). Since that is not the case here, the ALJ did not breach that duty, and her failure to develop the record further provides no basis for a remand.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner and to dismiss this case.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**